IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| ACFI 2002-1, L.L.C., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. CV 04-592-S-LMB |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| STEVEN RANSON and J. MICHAEL RANSON, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

Currently pending before the Court are Plaintiff's Application for Entry of Default against

J. Michael Ranson (Docket No. 6), Defendant J. Michael Ranson's Motion to Strike Plaintiff's

Application for Default (Docket No. 14), Defendant J. Michael Ranson's Special Appearance

and Motion to Dismiss (Docket No. 11), Plaintiff's Motion to Strike Defendant J. Michael

Ranson's Special Appearance and Motion to Dismiss (Docket No. 15), and Defendant Steven

Ranson's Motion to Dismiss for lack of personal jurisdiction (Docket No. 19).  Having carefully

reviewed the record, considered oral arguments, and otherwise being finally advised, the Court

enters the following Order.

ORDER - 1

# I.

## BACKGROUND[1]

In January 2001, AMRESCO Commercial Finance, LLC ("AMRESCO") a Delaware limited liability company with its principal place of business in Boise, Idaho, loaned Ranson Automotive, Inc., Ranson Chevrolet-Oldsmobile, Inc., and Ranson Land Company LLC (collectively "Borrowers") approximately $2.1 million (the "Loan"). *Complaint*, ¶¶ 5, 10-11 (Docket No. 1). The purpose of the Loan was to provide financing for Borrowers' automobile dealerships. *S. Ranson Memorandum*, p. 2 (Docket No.19, Att. 1). AMRESCO later assigned the Loan to Plaintiff ACFI 2002-1, LLC ("AFCI"), an Idaho limited liability company with its principal place of business in Boise, Idaho. ACFI is an affiliate of AMRESCO and is managed by AMRESCO. *Complaint*, ¶ 10 (Docket No. 1); *Moore Affidavit*, ¶¶ 2, 12 (Docket No. 28).

Defendants J. Michael Ranson and Steven Ranson (collectively "Defendants") are the majority shareholders in Borrowers and act as officers and directors of Borrowers. *Complaint*, ¶ 6 (Docket No. 1); *J.M. Ranson Memorandum*, p. 4 (Docket No. 21); *S. Ranson Affidavit*, ¶ 8 (Docket No.19, Att. 2). In that capacity, each signed the following Loan documents: a Promissory Note, a Pledge and Security Agreement, and an Indemnity. *Redding Affidavit*, Ex. 48, p. 11; Ex. 49, p. 25; Ex. 50, p. 6 (Docket No. 29). Each Defendant, in his individual capacity, also signed an Affiliate Guaranty (collectively "Guaranties") in which they guaranteed repayment

---

[1] When ruling on a motion to dismiss for lack of personal jurisdiction, uncontroverted allegations in the complaint must be taken as true and conflicts between parties over statements in affidavits must be resolved in the plaintiff's favor. *Dole Food Co. v. Watts*, 303 F.3d 1104, 1108 (9th Cir. 2000). Accordingly, the Background section relies on facts from Plaintiff's Complaint and various affidavits.

ORDER - 2

of the entire Loan amount. *Id.* at Exs. 51, 52.

Subsequently, Borrowers defaulted on the Loan and AMRESCO made demand for payment from Defendants pursuant to the Guaranties. *Complaint*, ¶ 14 (Docket No. 1); *Moore Affidavit*, ¶ 23 & Ex. 11 (Docket No. 28). ACFI alleges that the Defendants have not made payment as required by the Guaranties, and it has brought this instant action in the District of Idaho to recover for breach of contract. *Complaint*, ¶¶ 18, 21-24 (Docket No. 1); *see also J.M. Ranson Affidavit*, Ex. A, ¶ 65 (Docket No. 21, Att. 1). J. Michael Ranson is a resident of West Virginia, Steven Ranson is a resident of Virginia, and each have each moved to dismiss this action for lack of personal jurisdiction. *Answer*, p. 2 (Docket No. 2); *J.M. Ranson Affidavit*, ¶ 1 (Docket No. 21, Att. 1); *Motion* (Docket No. 11). ACFI opposes the motions to dismiss and has applied for default against J. Michael Ranson.

## II.

## APPLICATION FOR DEFAULT

### A.    Legal Standards

Federal Rule of Civil Procedure 12 provides twenty days from the date a summons and complaint is served for a defendant to serve an answer or otherwise respond. Fed. R. Civ. P. 12(a), (b). If a defendant fails to respond within that time, a default may be entered. *Direct Mail Specialists, Inc. v. Eclat Computerized Techs., Inc.*, 840 F.2d 685, 690 (9th Cir. 1988).

The disposition of a motion for default is within the Court's discretion. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). The factors the Court may consider when exercising this discretion include: (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's

ORDER - 3

substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). Judgment by default, however, is an extreme measure and whenever possible courts should decide cases on the merits. *Cmty. Dental Servs. v. Tani*, 282 F.3d 1164, 1170 (9th Cir. 2002) (citation omitted).

**B.     ACFI's Application for Entry of Default Against J. Michael Ranson**

ACFI has requested that this Court enter default judgment against J. Michael Ranson ("Mr. Ranson") for his failure respond to its Complaint by January 3, 2005. (Docket No. 6). Mr. Ranson has filed a Motion to Strike the Application for Default. (Docket No. 14).

There is some question concerning when Defendants effectively served Mr. Ranson with the Summons and Complaint, and thus whether the 20-day response period expired on January 3, 2005. ACFI asserts that it served both the Summons and the Complaint on December 14, 2004, *Affidavit of Counsel*, p. 2 (Docket No. 6, Att. 1), and the Affidavit of Service indicates that the process server delivered a copy of the Summons to Mr. Ranson on December 14, 2004, *Affidavit of Service* (Docket No. 13). In contrast, Mr. Ranson claims that ACFI served only the Complaint on December 14, 2004, and it was not until December 21, 2004 that he received a Summons. *Motion to Strike*, pp. 1-2 (Docket No. 14). He also states that he spoke with ACFI's counsel, notified counsel of the different dates, and received an oral assurance that he could have until January 10, 2005 to respond to the Complaint. *Id.* at p. 2. Mr. Ranson served a Motion to

ORDER - 4

Dismiss on ACFI on January 4, 2005[2]–one day past the January 3, 2005 deadline asserted by ACFI, but before January 10, 2005.

The Court need not determine on which date Mr. Ranson's response was due because, even if the deadline was January 3, 2005, the Court declines to enter default judgment under the circumstances of this case. At most, Mr. Ranson was one day late responding to the Complaint, and ACFI has asserted no prejudice from this one-day delay. Additionally, ACFI voluntarily dismissed its application for default as to Steven Ranson, even though it appears that his Answer was filed beyond the twenty-day time limit.[3] *Notice of Withdrawal* (Docket No. 9). The Court discerns no reason to treat the Defendants differently under the existing circumstances. Moreover, if Mr. Ranson's statements regarding the late-receipt of the Summons are accurate, it appears that his default may be due to excusable neglect. Finally, this case involves a large sum of money–ACFI is requesting over 3.2 million dollars in relief—and granting default would award ACFI all of its claimed damages without a determination of the case on the merits. *See Complaint*, ¶ 24 (Docket No. 1).

The Court is mindful of the policy expressed by Ninth Circuit Court of Appeals that "[c]ases should be decided upon their merits whenever reasonably possible," *Eitel*, 782 F.2d at 1472, and the Court prefers to hear this case on its merits. Accordingly, ACFI's Application for

---

[2] Pursuant to Federal Rule of Civil Procedure 5(b)(2)(B), "[s]ervice by mail is complete on mailing." Michael Ranson's certificate of service states that he mailed the Motion to Dismiss on ACFI on January 4, 2005. *Motion*, p. 3 (Docket No. 11). Mr. Ranson's Motion was not filed with the Court until January 10, 2005.

[3] ACFI served the Complaint on Steven Ranson on December 7, 2004, *Affidavit of Service* (Docket No. 12), but he did not serve his Answer until thirty days later, on January 6, 2005, *Answer* (Docket No. 2).

ORDER - 5

Default is denied and, as a result, J. Michael Ranson's Motion to Strike the Application is now moot.

### III.

### MOTIONS TO DISMISS FOR LACK OF PERSONAL JURISDICTION

**A.      Preliminary Matters**

     **i.      Motion to Strike J. Michael Ranson's Motion to Dismiss**

As an initial matter, ACFI has moved to strike J. Michael Ranson's Motion to Dismiss because he failed to adhere to District of Idaho Local Civil Rule 7.1 and file a supporting memorandum contemporaneously with his Motion to Dismiss.  (Docket No. 15).  Local rules are "binding upon the parties and upon the court, and a departure from local rules that affects 'substantial rights' requires reversal." *Prof'l Programs Group v. Dept. of Commerce*, 29 F.3d 1349, 1353 (9th Cir. 1994).  The Court, however, "has broad discretion to depart from the strict terms of the local rules where it makes sense to do so and substantial rights are not at stake." *Id.*

The local rule at issue here gives the Court discretion to consider the failure to file a required document a waiver of the motion.  *See* D. Idaho L. Civ. Rule 7.1(e).  Rule 7.1(e) does not *require* the Court to strike or otherwise deny Mr. Ranson's Motion because of his late-filed memorandum and affidavit; rather, the Court has discretion regarding whether and how to sanction a failure to comply with Rule 7.1.  Thus, the Court would not depart from the Local Rules by denying ACFI's Motion to Strike.  *See, e.g., Prof'l Programs*, 29 F.3d at 1353 (concluding there was no departure from the local rules because the district court's decision to allow a cross-motion to proceed short of the required notice period was clearly permitted by the

ORDER - 6

rules).  Moreover, the Court prefers to hear the Motion to Dismiss on the merits.  ACFI has now

had the opportunity to fully respond to Mr. Ranson's Memorandum supporting his Motion to

Dismiss and has suffered no prejudice (other than the time required to file a Motion to Strike)

from Mr. Ranson's failure to file the Memorandum at the same time as his Motion.  Accordingly,

ACFI's Motion to Strike is denied.

The Court notes, however, that J. Michael Ranson, an attorney, has again disregarded the

Local Rules by filing a Reply to ACFI's Response one month late, on May 17, 2005.  (Docket

No. 38).  Pursuant to District of Idaho Local Civil Rule 7.1(b)(3), Mr. Ranson's reply to ACFI's

responding papers was due on April 17, 2005.  As an attorney, Mr. Ranson should have been

aware of Local Rule 7.1 (and the consequences of failing to follow the Local Rules) because

ACFI had earlier moved to strike his Motion to Dismiss based on his failure to follow the same

rule.  Despite Mr. Ranson's failure, the Court will consider his untimely-filed reply papers.  The

Court, however, cautions Mr. Ranson that it will not disregard or excuse any further failures to

abide by the Rules.  They are readily available on the United States District Court for the District

of Idaho's website at http://www.id.uscourts.gov/rules.htm.

Additionally, because of Mr. Ranson's repeated failures to timely file documents in

accord with the Local Rules, the Court finds it appropriate to impose a sanction.  Mr. Ranson's

failure to file a timely memorandum supporting his Motion to Dismiss caused ACFI to expend

funds pursuing a Motion to Strike in order to compel Mr. Ranson to file the required

memorandum.  ACFI's action was necessary for it to learn the grounds for Mr. Ranson's

requested dismissal, and it needed this information to enable it to properly and timely respond to

ORDER - 7

the Motion to Dismiss.  For these reasons, the Court will exercise its discretion and require Mr.

Ranson to pay the attorneys' fees reasonably incurred by ACFI in filing its Motion to Strike.  *See*

D. Id. L. Civ. R. 7.1(e) (providing that the court, upon its own initiative, may impose sanctions in

the form of reasonable expenses incurred, for failure to comply with Rule 7.1's requirements).

Within twenty (20) days of the filing of this Order, counsel for ACFI shall submit documentation

of the fees incurred in bringing its Motion to Strike.

### ii.       J. Michael Ranson Did Not Consent to Jurisdiction

ACFI additionally argues that J. Michael Ranson has submitted to the general jurisdiction

of the Court because he filed a Motion to Strike ACFI's Application for Default in addition to

filing a Special Appearance and Motion to Dismiss.  *ACFI's Memorandum*, pp. 23-24 (Docket

No. 26).  ACFI claims that Mr. Ranson's Motion to Strike "sought affirmative relief from this

Court going well beyond a mere jurisdictional challenge" and, as a result, Mr. Ranson cannot

now challenge the Court's jurisdiction.  *Id*. at p. 24.  The Court views Mr. Ranson's action as an

attempt to preserve his ability to challenge the Court's jurisdiction, and not a voluntary

submission to the Court's general jurisdiction.  Further, the failure to oppose a motion may be

deemed a consent to the relief requested.  D. Id. L. Civ. R. 7.1(e).  Thus, had Mr. Ranson chosen

not to respond to the default application, it would have been within the court's discretion to grant

the requested default.  Rather, Mr. Ranson correctly chose the cautious route and filed an

opposition to the default application.

Additionally, Mr. Ranson's Motion to Strike specifically states that he is making a

"Special Appearance" and is "not conceding the personal jurisdiction of this Court over him."

ORDER - 8

*Motion to Strike*, p. 1 (Docket No. 14).  Under similar circumstances, the Ninth Circuit Court of

Appeals has declined to find that the defendants submitted to a court's general jurisdiction.  *See*

*Benny v. Pipes*, 799 F.2d 489 (9th Cir. 1986).  In *Benny*, the court concluded that the defendants'

filing of three motions to enlarge the time to respond to the complaint, only one of which

specifically reserved an affirmative Rule 12(b) defense, did not constitute a general appearance.

*Id*. at 492-93.  Similarly here, the Court concludes that Mr. Ranson's filing of a Motion to Strike

ACFI's Application for Default, a Motion that specifically reserved his right to challenge

personal jurisdiction, did not equate to a general appearance in this action.  In the Court's view,

Mr. Ranson properly preserved his right to challenge personal jurisdiction.

       Mr. Ranson also did not consent to personal jurisdiction by signing a Forbearance

Agreement in May of 2003.  *See ACFI Memorandum*, p. 5 (Docket No. 26).  This Agreement

contains a provision providing that "jurisdiction and venue for any legal proceeding arising out of

or related to this Agreement is proper only in Idaho."  *Moore Affidavit*, Ex. 8, ¶ 14 (Docket No.

28).  Mr. Ranson signed the Agreement in his personal capacity and on behalf of Borrowers.[4]

His consent, however, is limited to an agreement to jurisdiction and venue in Idaho for claims

related to the Forbearance Agreement, and not for all purposes.  The Forbearance Agreement

does not modify Mr. Ranson's Guaranty in which he agreed that Idaho law would govern

interpretation of the contract but did not expressly agree to jurisdiction and venue in Idaho.  *See*

*id.* at ¶ 19(a) (providing that "the Loan Documents remain in full force and effect").

_____

     [4]  The fact that Borrowers consented to jurisdiction in the Forbearance Agreement does
not mean that Steven Ranson–who did not sign the Agreement in any capacity–also consented to
jurisdiction in Idaho for all purposes.

ORDER - 9

Accordingly, the Court concludes that Mr. Ranson did not consent to jurisdiction in Idaho for an action on the Guaranty by entering the Forbearance Agreement.

**B.      Legal Standards for Motions to Dismiss for Lack of Personal Jurisdiction**

AFCI, as the plaintiff, bears the burden of demonstrating that this Court has personal jurisdiction over the Defendants.  *Data Disc, Inc. v. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977).  To evaluate whether personal jurisdiction exists, uncontroverted allegations in the Complaint are taken as true and conflicts between parties over statements in affidavits are resolved in the plaintiff's favor.  *Dole Food Co. v. Watts*, 303 F.3d 1104, 1108 (9th Cir. 2000).  Also, where, as here, the motion is based on written materials rather than on an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts to survive the motion to dismiss.  *Ziegler v. Indian River County*, 64 F.3d 470, 473 (9th Cir. 1995).  In other words, if a plaintiff's proof on the jurisdictional issue is limited to written materials, it is necessary only for these materials to demonstrate facts which support a finding of jurisdiction in order to avoid a motion to dismiss.

In order to establish the existence of personal jurisdiction in this case, ACFI must show that (1) Idaho's long-arm statute confers personal jurisdiction over the nonresident Defendants, and (2) the exercise of jurisdiction accords with federal constitutional principles of due process.  *Lake v. Lake*, 817 F.2d 1416, 1420 (9th Cir. 1987).

**i.      Long-Arm Statute**

The Supreme Court of Idaho imposes a two-part test for an Idaho court to exert jurisdiction over an out-of-state defendant.  *See Smalley v. Kaiser*, 130 Idaho 909, 912 (1997).

ORDER - 10

First, the act giving rise to the cause of action must fall within the scope of Idaho's long-arm statute and, second, the constitutional standards of due process must be met. *Id*.

Idaho's long arm statute grants jurisdiction to Idaho courts over causes of action which arise from "the transaction of business within this state which is hereby defined as the doing of any act for the purpose of realizing pecuniary benefit or accomplishing or attempting to accomplish, transact or enhance the business purpose or objective or any part thereof of such person, firm, company, or association or corporation." Idaho Code § 5-514. The Supreme Court of Idaho has analyzed this long arm statute as follows:

> I.C. § 5-514 must be liberally construed. The statute was designed to provide a forum for Idaho residents; (a)s such, the law is remedial legislation of the most fundamental nature. . . . By enacting the statute the legislature intended to exercise all the jurisdiction available to the State of Idaho under the due process clause of the United States Constitution.

*Intermountain Bus. Forms, Inc. v. Shepard Bus. Forms Co.*, 96 Idaho 538, 540-41 (1975) (citations and internal quotation marks omitted). *See also Purco Fleet Servs., Inc. v. Idaho State Dept. of Finance*, 140 Idaho 121, 124 (2004). Thus, the inquiry is the same under both Idaho's long arm statute and the federal due process clause. *See Lake*, 817 F.2d at 1420 (explaining that the Idaho and federal limits on personal jurisdiction are coextensive). When the limits on jurisdiction are coextensive, the court "need only analyze whether the exercise of jurisdiction comports with due process." *Sinatra v. Nat'l Enquirer*, 854 F.2d 1191, 1194 (9th Cir. 1988). *See also Dole*, 303 F.3d at 1110.

### ii.    Due Process

To satisfy due process, "the defendant's conduct and connection with the forum State

ORDER - 11

[must be] such that he should reasonably anticipate being haled into court here." *World-Wide Volkswagon Corp. v. Woodson*, 444 U.S. 286, 297 (1980).  Due process "does not contemplate that a state may make binding a judgment in personam against an individual or corporate defendant with which the state has no contacts, ties, or relations." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945).  If the defendant's contacts are neither substantial, nor continuous and systematic, but the cause of action arises out of or is related to the defendant's forum activities, "limited" or "specific" personal jurisdiction exists.[5]  Whether a forum state may assert specific jurisdiction depends on the quality and nature of the defendant's contacts with the forum state in relation to the cause of action.  *See Lake*, 817 F.2d at 1421.  Specifically, the Court may exercise "specific jurisdiction" when the following requirements are met:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privileges of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Lake*, 817 F.2d at 1421; *see also Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995).

---

[5]  The Court may exercise either general or specific jurisdiction over a defendant.  *AT&T Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996), *as amended* 95 F.3d 1156 (9th Cir. 1996).  The Court concludes that the Defendants' contacts here are not sufficient to exercise general jurisdiction and will analyze only whether the exercise of specific jurisdiction is appropriate.

ORDER - 12

### a.    Purposeful Availment

The first requirement is that the non-resident defendant must purposefully avail himself of the privileges of conducting activities in the forum.  "Purposeful availment requires some kind of affirmative conduct by the defendant which allows or promotes the transaction of business within the forum state."  *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 840 (9th Cir. 1986).  "[T]he 'purposeful availment' requirement is satisfied if the defendant has taken deliberate action within the forum state or if he has created continuing obligations to forum residents."  *Ballard*, 65 F.3d at 1498.  "[M]erely contracting with a resident of the forum state is insufficient to confer specific jurisdiction over a nonresident."  *Ziegler*, 64 F.3d at 473.  Rather, the Court should evaluate prior negotiations, contemplated future consequences of the contract, the terms of the contract, and the parties' actual course of dealing.  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 479 (1985).

### b.    Claim Must Relate to Forum Activities

The second requirement is that the contacts constituting purposeful availment be the ones that give rise to the current suit.  In other words, "the claim must be one which arises out of or results from the defendant's forum-related activities."  *Decker Coal*, 805 F.2d at 839.

### c.    Reasonableness

The final requirement is that exercise of personal jurisdiction be reasonable.  Courts are to presume that an otherwise valid exercise of specific jurisdiction is reasonable.  *Ballard*, 65 F.3d at 1500.  To avoid jurisdiction, the defendant must "present a *compelling* case that the presence of some other consideration would render jurisdiction unreasonable."  *Burger King*, 471

ORDER - 13

U.S. at 477 (emphasis in the original).  In determining whether the exercise of jurisdiction

comports with "fair play and substantial justice," and is therefore "reasonable," the Court should

consider the following seven factors:

> (1) the extent of the defendants' purposeful interjection into the
> forum state's affairs; (2) the burden on the defendant of defending
> in the forum; (3) the extent of conflict with the sovereignty of the
> defendants' state; (4) the forum state's interest in adjudicating the
> dispute; (5) the most efficient judicial resolution of the
> controversy; (6) the importance of the forum to the plaintiff's
> interest in convenient and effective relief; and (7) the existence of
> an alternative forum.

*Core-Vent Corp. v. Nobel Industries AB*, 11 F.3d 1482, 1487-88 (9th Cir. 1993).  None of these

factors is dispositive, so the Court must engage in a balancing process.  *Id.* at 1488.

**C.      Defendants' Motions to Dismiss**

ACFI's breach of contract claim is based on Guaranties executed by J. Michael and

Steven Ranson (the "Defendants") in which each personally guaranteed payment of all

Borrowers' obligations to AMRESCO on the Loan.  Defendants also are the sole shareholders of

the Borrower entities, act as officers and directors of Borrowers, and executed all necessary Loan

documents on behalf of Borrowers.  Defendants, in both their individual and corporate capacities,

executed the Loan documents in Virginia and West Virginia.  *J.M. Ranson Memorandum*, p. 2

(Docket No. 21); *S. Ranson Affidavit*, ¶ 12 (Docket No. 19, Att. 2).  Although it appears that

Borrowers have defaulted on their Loan commitments, ACFI has brought no claims against

Borrowers in this action.  Instead, ACFI seeks to recover the amount due on the Loan from the

Defendants individually based on their Guaranties.  Defendants argue this Court does not have

ORDER - 14

jurisdiction over them because they are residents of Virginia and West Virginia, executed the

Loan documents in those states, and were not aware of Idaho's connection to the Loan

transaction.

> ### i.   Defendants Purposefully Availed Themselves and ACFI's Claims Arise Out of Defendants' Contacts

Defendants initially point out that they never traveled to Boise to discuss any of the Loan

matters or complete the deal, and argue that this supports a finding of no personal jurisdiction. *S.*

*Ranson Memorandum*, p. 3 (Docket No. 19, Att. 1); *J.M. Ranson Memorandum*, p. 4 (Docket No.

21). Even an act done outside the forum state, however, can suffice as a basis for jurisdiction.

*Harris Rutsky Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1130 (9th Cir. 2003)

(considering phone, fax, and mail contacts); *see also Hirsch v. Blue Cross, Blue Shield of*

*Kansas*, 800 F.2d 1474, 1478-79 (9th Cir. 1986). "[I]t is an inescapable fact of  modern

commercial life that a substantial amount of business is transacted solely by mail and wire

communications across state lines." *Burger King*, 471 U.S. at 476. Thus, Defendants' lack of

physical contact with Idaho does not necessarily preclude jurisdiction.

Defendants also argue that this Court lacks jurisdiction over them because they have not

engaged in conduct related to the Guaranties that would subject them to jurisdiction in Idaho.

*J.M. Ranson Memorandum*, p. 6 (Docket No. 21); *S. Ranson Memorandum*, pp. 5-6 (Docket No.

19, Att. 1). Defendants suggest that their contacts with Idaho for the purpose of arranging and

documenting Borrowers' Loan were solely in their capacity as officers of Borrowers and should

not be considered in determining whether their contact was sufficient to subject them to a suit in

ORDER - 15

Idaho based only on a breach of the Guaranties.[6]  The Court, however, is of the view that the

Guaranties were a necessary part of a unified Loan transaction[7] and Defendants, in their

individual capacities, were aware of the Idaho connection to the Loan they agreed to guaranty.

The relevant inquiry here is whether Defendants' contacts were such that they could reasonably

expect being haled into court in Idaho.  *Burger King*, 471 U.S. at 474.  The entirety of the Loan

transaction reveals that Defendants reasonably could have anticipated that an action based on

breach of the Guaranties might be filed in Idaho.

The Defendants agreed to make the Guaranties for the specific purpose of inducing

AMRESCO to loan money to Borrowers.  The Guaranties specifically state that they are "an

express condition to the undertaking of the Loans by [AMRESCO] to the Borrowers."  *Redding*

*Affidavit*, Ex. 51, ¶ C; Ex. 52, ¶ C (Docket No. 29).  If Defendants had not agreed to execute the

Guaranties, AMRESCO would not have made the Loan to Borrowers.  *Moore Affidavit*, ¶ 18

---

[6]  As explained above, the Court's focus is on the federal due process requirements for jurisdiction.  Both Defendants, however, rely on the Idaho case of *Mann v. Coonrod*, 125 Idaho 357, 358, 870 P.2d 1316, 1317 (1994) to argue that their contacts with Idaho were insufficient to allow personal jurisdiction.  In *Mann*, the Idaho court declined to exercise jurisdiction over a resident of Minnesota where his only contact with Idaho was his status as a shareholder in an out-of-state company that entered a contract with an Idaho business and his participation in one conference call (that he did not initiate) with the other shareholder in the company and the Idaho business.  Unlike the present case, the shareholder in *Mann* apparently did not sign a contract in his personal capacity or on behalf of the company, nor did he send any documents to Idaho to close the deal.  In sum, the Defendants' contacts with Idaho here are more involved than that of the shareholder in *Mann*, and their only contacts with Idaho are not related *solely* to their status as shareholders in the Borrowers.  For these reasons, the Court finds *Mann* unpersuasive here.

[7]  At the May 25, 2005 hearing, counsel for Steven Ranson acknowledged that the Loan documents and Guaranties were part of the same package or transaction.  J. Michael Ranson, also an attorney, did not dispute that it was a collective transaction.

ORDER - 16

(Docket No. 28).  Each Guaranty explains that Defendants were providing the guaranty to "induce [AMRESCO] to make the Loans to the Borrower[s]."  *Redding Affidavit*, Ex. 51, ¶ C.2 & C.12(k); Ex. 52, ¶ C.2 & C.12(k) (Docket No. 29).  Additionally, the Guaranties specify that Defendants are "affiliate[s] of the Borrower[s]" and "will benefit from [AMRESCO's] making such loans to the Borrower."  *Id.* at Ex. 51, ¶ B; Ex. 52, ¶ B.[8]  In effect, Defendants sought an individual benefit from the Loan and agreed to guaranty the Loan for this reason.  In doing so, they created a continuing personal obligation to AMRESCO in Idaho to make payments on the Loan should Borrowers default.  In addition to this obligation to pay, Defendants agreed to other continuing obligations under the Guaranties, such as providing copies of personal tax returns to AMRESCO each year and copies of financial statements as requested.  *Id.* at Ex. 51, ¶ C.12(i), (j) & Ex. 52, ¶ C.12(i), (j).  Creating these personal "continuing obligations" weighs in favor of finding purposeful availment.  *See Ballard*, 65 F.3 at 1498.

Considering the Defendants' stated personal benefit from the Loan, the Court finds it appropriate to look at all the Loan documents to evaluate the Defendants' knowledge of the Idaho connection to the transaction as a whole.  *See Burger King*, 471 U.S. at 479 (noting that courts can consider the contract terms in assessing purposeful availment).  All of the Loan documents make it apparent that Borrowers were seeking financial assistance from AMRESCO in Idaho.  This Idaho connection was readily noticeable to any individuals, such as Defendants, who reviewed and signed the documents.

---

[8]  Schedule 3 to the Pledge and Security Agreement contains a list of Borrowers' affiliates that includes J. Michael and Steven Ranson in their individual capacities.  *Redding Affidavit*, Ex. 49, p. 31 (Docket No. 29).

First, the Pledge and Security Agreement lists a Boise, Idaho address for AMRESCO and requires that all notices under the Agreement be sent to this Idaho address.  *Redding Affidavit*, Ex. 49, ¶ 15.2 (Docket No. 29).  Second, the Pledge and Security Agreement states that *all* Loan documents are entered into in the state of Idaho, notes that AMRESCO's principal place of business and executive office are located in Idaho, directs that all notices and sums due be sent to Idaho, and designates Idaho law to govern disputes.[9]  *Id.* at Ex. 49, ¶ 15.9.  Third, both the Indemnity and the Promissory Note designate Idaho law to govern interpretation and enforcement of the agreements.  *Id.* at Ex. 48, ¶ 13(g); Ex. 50, ¶ 15.  Finally, and significantly, the Guaranties themselves list AMRESCO's Boise, Idaho, address, and contain Idaho choice of law provisions.  *Id.* at Ex. 51, p. 7 & ¶ C.15(d); Ex. 52, p. 7 & ¶ C.15(d).[10]

All of these Idaho references in the contract documents make clear the connection AMRESCO's headquarters in Idaho had with the Loan transaction.  As a result, Defendants should reasonably have anticipated being haled into court in Idaho in the event Borrowers

---

[9]  The Pledge and Security Agreement also contains a provision whereby Borrowers consented to jurisdiction in Idaho.  ACFI argues that Defendants, in their individual capacities, thus consented to the jurisdiction of this Court by signing the Pledge and Security Agreement in their capacities as Borrowers' officers.  *ACFI Memorandum*, pp. 4-5 (Docket No. 26).  The Court disagrees.  Defendants signed this Agreement only in their representative capacities and ACFI has provided no authority requiring the Court to hold Defendants individually to this promise.

[10]  Sections C.15(d) in the Guaranties use only the word "State" without specifying that the State "of Idaho" will provide the governing law for the agreement.  The Guaranties, however, incorporate the definitions from the Pledge and Security Agreement, *Redding Affidavit*, Exs. 51 & 52 at ¶ C.1 (Docket No. 29), which, in turn, refers to the definition of "State" contained in the Promissory Note.  *Id.* at Ex. 49 ¶ 1.2.  The Promissory Note defines "State" as the State of Idaho.  *Id.* at Ex. 48 ¶ 13(g) (providing that the term "State" as used in the Promissory Note and all other Loan documents shall mean the State of Idaho).

ORDER - 18

defaulted on the Loan and Defendants failed to meet their obligations to guaranty payment of the Loan to AMRESCO in Idaho.  *Compare Burger King*, 471 U.S. at 480 (determining that the defendant "most certainly knew that he was affiliating himself with an enterprise based primarily in Florida" because "[t]he contract documents themselves emphasize that [Plaintiff's] operations are conducted and supervised from the Miami headquarters, that all relevant notices and payments must be sent there, and that the agreements were made in and enforced from Miami").  Additionally, making the forum state's law the governing law under the contract reinforces the reasonable foreseeability of possible litigation in the forum.  *Burger King*, 471 U.S. at 481-82.  *See also Decker Coal*, 805 F.2d at 840; *Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1331 (9th Cir. 1984) (finding "purposeful availment" where the defendant solicited a distributorship agreement in the forum state and the agreement specifically designated the forum law to govern it).  Thus, the contract documents, including the Guaranties, clearly anticipate that Idaho may be an appropriate forum to resolve disputes arising from the Loan transaction and Guaranties.

In addition to the contract documents themselves, Defendants' actions with regard to the Guaranties demonstrate purposeful availment.  Defendants engaged in contacts with Idaho specifically related to the Guaranties during the negotiation and documentation phases of the Loan process.  Lenise Redding from AMRESCO's Idaho office requested personal financial information from Defendants, and they sent her financial information used to determine the feasibility of securing the Loan through their personal guaranties.  *Redding Affidavit*, ¶¶ 8, 12 (Docket No. 29).  Defendants' signed Guaranties were also sent to AMRESCO's Idaho office.  *Id.* at ¶¶ 60-61.

ORDER - 19

Despite these contacts, both Defendants claim that they dealt only with agents of AMRESCO in Texas or that it was their understanding the Loan was being processed in Texas. *S. Ransons Affidavit*, ¶ 14 (Docket No. 19, Att. 2); *J.M. Ranson Memorandum*, p. 2 (Docket No. 21).  Crediting, as it must, the affidavits submitted by ACFI, the Court determines that Defendants knew of the significant role AMRESCO in Idaho performed in documenting and servicing the Loan.  The record reveals numerous communications between Defendants and AMRESCO's Idaho office for the purpose of providing documentation and making arrangements for the Loan.  *See, e.g., Redding Affidavit* (Docket No. 29).  Indeed, J. Michael and Steven Ranson both executed several Loan documents that were originated by, and then delivered back to, ACFI in Boise, Idaho.  *Id.* at ¶ 6.  Even if these contacts were made in Defendants' corporate capacities, the contacts evince a knowledge of the Idaho connection to the Loan and the Guaranties, making Defendants' disclaimer of knowledge untenable.

While it appears that J. Michael Ranson engaged in more contact than did Steven Ranson, both individuals' contacts are sufficient for ACFI to satisfy the requisite *prima facie* showing for purposeful availment when considered with the other contacts described above.  During the loan application and processing period, Lenise Redding, a Loan Coordinator/Legal Specialist who coordinated the Loan, had "numerous telephone conversations in [her] Boise, Idaho office with J. Michael Ranson or his agents regarding the status . . . and documentation of the loan."  *Redding Affidavit*, ¶ 4 (Docket No. 29).  Ms. Redding made J. Michael Ranson aware that she was the person reviewing many of the documents he provided in connection with the Loan.  *Id.* at ¶ 8 & Exs. 3-4, 8.  Indeed, J. Michael Ranson provided the requested information *directly* to Ms.

ORDER - 20

Redding in Boise.  *Id.* at ¶¶ 8, 18 & Exs. 6, 8, 9, 11, 12, 14, 15, 21, 26.  He sent property,

corporate entity, financial, and other loan application information to ACFI headquarters in Boise

and communicated with Ms. Redding by email.  *Id.* at ¶¶ 8, 18 & Exs. 3-6, 8, 9, 11, 12, 21.

Additionally, Ms. Redding faxed information from Boise to J. Michael Ranson, *id.* at Exs. 13,

15, 23, and Mr. Ranson faxed information to her in Boise, *id.* at Exs. 6, 21, 28.  The final loan

documents, including the Guaranties, were sent to J. Michael Ranson from Ms. Redding in the

Idaho AMRESCO office, and he returned the executed and notarized closing documents to Ms.

Redding in Idaho.  *Id.* at Ex. 27-28.

  Although Steven Ranson's contacts do not appear to be as extensive, they still indicate

that he was aware he was dealing with AMRESCO in Idaho, and not just the Texas office.  Ms.

Redding sent a letter to Steven Ranson dated November 27, 2000, in which she introduced

herself as the coordinator for the loan application and informed him that she is located in

AMRESCO's Boise, Idaho office.  *Redding Affidavit*, ¶ 12 & Ex. 2 (Docket No. 29).  The

underwriter for the Loan was located in the Dallas office, but Ms. Redding explained that all

information regarding the Loan should be sent to her in the Boise office, including the loan

application.  *Id*.

  Steven Ranson received other documents indicating the involvement of AMRESCO's

Idaho office in the transaction.  For example, he received a fax from Land America listing title

documents needed to close on the Loan, and the information was contemporaneously faxed to

Ms. Redding in Boise.  *Id.* at Ex. 24.  Ms. Redding faxed the disclosure statement for funding the

Loan from her Idaho office to both Steven and J. Michael Ranson.  *Id.* at Ex. 40.  J. Michael

ORDER - 21

Ranson also copied Steven on correspondence he sent to Ms. Redding in Boise.  *Id.* at Ex. 30.

Moreover, Ms. Redding spoke with Steven on the telephone at least once regarding UCC

terminations required to close on the Loan, he faxed documents to Ms. Redding in Boise, and he

twice shipped documents via Federal Express to Ms. Redding in Boise.  *Id.* at ¶¶ 42, 51, 55 &

Exs. 32, 33, 36, 37, 41, 42, 45.  Steven acknowledges that he made a return call to Ms. Redding

in Boise.  *S. Ranson Affidavit*, ¶ 16 (Docket No. 19, Att. 2).

         All of the these activities show that Defendants knew they were guarantying a Loan

handled by a business in Idaho and that each took "deliberate action" in executing the Guaranties,

thereby creating "continuing obligations" to a business located in Idaho.  *See Ballard*, 65 F.3d at

1498.  For all these reasons, Defendants' contacts are sufficient to constitute purposeful

availment.

         The contacts constituting purposeful availment are also ones that give rise to the current

action.  In summary, it is clear to the Court that Defendants engaged in contacts in Idaho to

secure a Loan for which they decided to personally guaranty payment to AMRESCO–a company

with its principal place of business in Idaho.  Without these contacts and the subsequent breach

of the Guaranties, ACFI would not have suffered the alleged damages it claims to have

experienced.  For these reasons, ACFI has met its burden to make a *prima facie* showing of the

first two requirements sufficient for this Court to find and thus conclude that personal

jurisdiction comports with principles of due process.[11]

_____

         [11]  In a similar case, this Court issued a decision determining that it lacked personal
jurisdiction over a guarantor of a loan.  *See Wachovia Trust Co., et al. v. Prince*, Case No. 04-
291-S-LMB.  The *Wachovia* decision took into account, among other things, that the guarantor

ORDER - 22

**ii.      Personal Jurisdiction is Reasonable**

The final requirement is that exercise of personal jurisdiction be reasonable.  The Court

presumes that an otherwise valid exercise of specific jurisdiction is reasonable, *Ballard*, 65 F.3d

at 1500, and the burden is on Defendants to prove unreasonableness, *Bancroft & Masters Inc. v.*

*Augusta Nat., Inc.*, 223 F.3d 1082, 1088 (9th Cir. 2000).  To avoid jurisdiction, they must

"present a *compelling* case that the presence of some other considerations would render

jurisdiction unreasonable."  *Ballard*, 65 F.3d at 1500 (emphasis in original).

Defendants argue, among other things, that jurisdiction is unreasonable because of the

difficulty they face, as residents of West Virginia and Virginia, litigating in a foreign state.  The

Ninth Circuit Court of Appeals has rejected a similar argument made by European defendants

required to litigate in California.  *See Dole*, 303 F.3d at 1115.  The court in *Dole* recognized that

litigating in California would be expensive and inconvenient for the defendants, but noted that

"[m]odern advances in communications and transportation have significantly reduced the burden

of litigating in another country."  *Id.* (citation and internal quotation marks omitted).  With regard

to the other factors of reasonableness, Defendants have not alleged a conflict of laws and, in fact,

the Guaranties each contain a choice of law provision designating Idaho as the governing law.

*See id.* at 1116 (considering the impact of a choice-of-law provision on the "efficient resolution"

factor).  Additionally, Idaho has an interest in providing a forum for businesses who suffer

---

never telephoned the lender in Idaho, some of the loan documents included consents to
jurisdiction in Georgia, and an alternative forum was readily available because the plaintiffs had
filed a related court action in Georgia.  In the Court's view, the present action involves
considerably more numerous and telling contacts with Idaho than existed in the *Wachovia* case.

ORDER - 23

economic harm here.  In short, after carefully and thoroughly reviewing the seven pertinent

factors and the evidence in the record, the Court concludes that Defendants have failed to meet

their heavy burden to prove unreasonableness.

### iii.     Summary

After an extensive review of the record and careful application of the controlling legal

authorities, the Court concludes that the aforementioned facts and relationships are sufficient for

a *prima facie* showing of personal jurisdiction over Defendants.  Accordingly, Defendants'

Motions to Dismiss for lack of jurisdiction are denied.

## IV.

## ORDER

Accordingly, IT IS HEREBY ORDERED:

1.      Plaintiff's Application for Entry of Default (Docket No.6 ) is DENIED.

2.      Defendant J. Michael Ranson's Motion to Strike (Docket No. 14) is DENIED as
        moot.

3.      Plaintiff's Motion to Strike J. Michael Ranson's Special Appearance and Motion
        to Dismiss (Docket No. 15) is DENIED.  The Court, however, has imposed as a
        sanction the fees reasonably incurred by Plaintiff in pursuing this Motion.
        Plaintiff shall file an affidavit of fees within twenty (20) days of the filing of this
        Order.

ORDER - 24

4.      Defendant J. Michael Ranson's Motion to Dismiss for Lack of Personal

Jurisdiction (Docket No. 11) is DENIED.

5.      Defendant Steven Ranson's Motion to Dismiss for Lack of Personal Jurisdiction

(Docket No. 19) is DENIED.



DATED:  **June 2, 2005**.

_____

Honorable Larry M. Boyle

Chief U. S. Magistrate Judge

ORDER - 25